UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ASHLEY MARIE PRITCHARD,

                              Plaintiff,        Case # 18-CV-1460-FPG

v.                                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

On December 18, 2014,[1] Plaintiff Ashley Marie Pritchard protectively applied for Disability Insurance Benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI alleging disability beginning on September 29, 2014. Tr.[2] 243-56. The Social Security Administration ("SSA") denied her claim (Tr. 142-63), and on August 24, 2017, Plaintiff testified at a video hearing before Administrative Law Judge Benjamin Chaykin ("the ALJ"). Tr. 93-139. On November 6, 2017, the ALJ issued an unfavorable decision. Tr. 13-23. Plaintiff submitted additional evidence to the Appeals Council, but was denied her request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties make competing motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 17, 18. For the reasons that follow, Plaintiff's motion is

---

[1] Plaintiff's applications for benefits are dated January 23, 2015 (Tr. 243-56), but both the ALJ and Plaintiff assert her applications were made on December 18, 2014. Tr. 13; ECF No. 17-1 at 2.

[2] "Tr." refers to the administrative record in this matter. ECF No. 9.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

1

GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further administrative proceedings.

## LEGAL STANDARD

When reviewing a final decision of the SSA, it is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted).

The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## DISCUSSION

In conducting the requisite five-step analysis,[4] the ALJ determined that Plaintiff's lumbar spine and cervical spine degenerative disc disease were severe impairments, while her asthma, headaches, left ovarian cyst, and fibromyalgia were non-severe impairments.[5] Tr. 16-17. The ALJ also determined that Plaintiff's mental impairments, including affective disorder, anxiety disorder, posttraumatic stress disorder, and borderline personality disorder, were non-severe impairments. Tr. 17.

---

[4] The ALJ uses this analysis to determine whether a claimant is disabled and therefore entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920.

[5] A severe impairment "significantly limits the claimant's ability to do basic work activities" and a nonsevere impairment will "only minimally affect the claimant's ability to work." *Thompson v. Comm'r of Soc. Sec.*, No. 18-CV-167-FPG, 2019 WL 4016167, at *2 (W.D.N.Y. Aug. 26, 2019).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC")[6] to perform light work, which requires lifting up to 20 pounds at a time with frequent lifting or carrying of up to 10 pounds. Tr. 18; *see* 20 C.F.R. §§ 404.1567(c), 416.967. The ALJ also found that Plaintiff could not climb ropes, scaffolds or ladders; could occasionally climb ramps and stairs; and could occasionally stoop, crouch, balance, kneel, and crawl. Tr. 18-19. The ALJ further assessed that Plaintiff could frequently reach, handle, and finger bilaterally and frequently operate foot controls bilaterally. Tr. 19. Plaintiff's RFC also limited her to having no exposure to dangerous hazards or pulmonary irritants. Tr. 19.

Plaintiff argues that remand is required because (1) the ALJ's determination that Plaintiff's mental impairments were non-severe was not supported by substantial evidence and (2) that the ALJ improperly cherry-picked the medical opinions of record when determining Plaintiff's RFC. The Court agrees.

## I. Plaintiff's Mental Impairments are Severe

The Second Circuit has long held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). While the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition severe," *Critoph v. Berryhill*, No. 1:16-CV-00417 (MAT), 2017 WL 4324688, at *3 (W.D.N.Y. Sept. 28, 2017) (citation omitted), where a plaintiff produces some evidence of an impairment, the Commissioner may make a determination of non-disability at Step Two only when the medical evidence "establishes only a slight abnormality or combination of

---

[6] A claimant's RFC reflects her ability to perform physical or mental work activities on a sustained basis despite her impairments. 20 C.F.R. §§ 404.1520(e)-(f), 416.920.

3

slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *See* SSR 85-28, 1985 WL 56856, at *3 (1985).

Here, the ALJ found Plaintiff's mental impairments to be non-severe. Tr. 17. Based on selective interpretations of Plaintiff's hearing testimony and consultative examination, the ALJ found that Plaintiff had "no significant limitation" in understanding, remembering, or applying information; a "mild limitation" in interacting with others; a "mild limitation" in concentrating, persisting, and maintaining pace; and "no significant limitation" in adapting or managing oneself. Tr. 17. The ALJ then concluded that Plaintiff's "medically determinable mental impairments cause[d] no more than [a] 'mild' limitation in any of the functional areas" and were thus non-severe. Tr. 18.

The ALJ's determination that Plaintiff's mental impairments are non-severe is not supported by substantial evidence. The ALJ relied on Plaintiff's testimony that she could do household chores, drive, shop, care for her children, and interact with her family members to determine that Plaintiff had non-significant or mild limitations in the four areas of mental functioning. Tr. 17. But the ALJ ignored other portions of Plaintiff's testimony. For example, Plaintiff testified that she has no choice but to drive her kids to school, though there are periods where she does not drive for four days at a time or leave the house at all. Tr. 105, 125. Plaintiff testified that she tries not to interact with people outside her family unless she has to and indeed has no close friendships and does not form relationships well. Tr. 123-24. Her lack of social interaction was confirmed at her mental consultative examination with Janine Ippolito, Psy. D. (Tr. 371), and by her reported difficulty speaking to her children's teachers at a single parent-teacher conference (Tr. 124).

4

Plaintiff further testified that she can only go to appointments or the grocery store when accompanied by her husband or mother-in-law (Tr. 126) and indeed attended her consultative examination with her cousin (Tr. 368). She told Dr. Ippolito that she can do house chores and grocery shopping "as needed" but that she "sometimes neglects these tasks due to chronic pain and depression." Tr. 371. The ALJ found that Plaintiff "related well" at the hearing and "had no difficulty understanding and responding to questions . . . ." Tr. 17. However, during the hearing, the ALJ needed to repeatedly remind Plaintiff to "confine [her] responses" to only answering the questions asked of her, rather than talking about aspects of her functioning unrelated to the question. Tr. 106, 107, 110, 112-13. Furthermore, Plaintiff's testimony was consistent that she has difficulty with interpersonal interactions. Tr. 120, 123, 124, 125.

The ALJ's determination that Plaintiff's mental impairments are non-severe is further undermined by substantial evidence in the record. The ALJ found that Plaintiff "has received no significant treatment for mental health symptoms" despite evidence to the contrary. Tr. 17, 327-52, 377-418. Dr. Michael Ostolski diagnosed and treated Plaintiff for depression, anxiety, and bipolar disorder for two years before referring her to Horizon Health Services. Tr. 120, 329, 331, 335, 337, 339, 341, 343, 345, 347, 349, 351. During some of her exams with Dr. Ostolski, Plaintiff was crying, reported shortness of breath and headaches due to anxiety, and exhibited anxious mood and depression. Tr. 328, 329, 334, 335, 347, 351.

Plaintiff was treated at Horizon Health Services for over a month for bipolar disorder, posttraumatic stress disorder, and depression and anxiety. Tr. 379, 389-90, 412. Plaintiff reported leaving treatment because she did not feel comfortable with her counselors there. Tr. 117, 120. However, the treatment notes from the time she did spend there describe Plaintiff's history with abusive relationships; physical and sexual abuse she suffered as a child; high anxiety, which she

5

rated at a "9/10 for the past couple years"; daily panic attacks which she rated at a "10/10" with associated nervousness and dry heaving; racing thoughts and long-windedness; feelings of being highly frustrated and overwhelmed; and sleeplessness. Tr. 379, 385, 389-90, 393, 397, 415. The notes also detail Plaintiff's prior suicide attempt. Tr. 390, 393, 417.

The Commissioner's own consultative examiner Dr. Ippolito found Plaintiff has a moderate limitation in dealing with stress and that her memory was impaired due to anxiety and nervousness during the exam. Tr. 370, 371. The record supports a finding under the *de minimis* standard that Plaintiff's mental impairments are severe. The ALJ's failure to find Plaintiff's mental impairments to be severe was error. *See Phakkhonkham v. Comm'r of Soc. Sec.*, 346 F. Supp. 3d 370, 377 (W.D.N.Y. 2018) (finding where "the record in this case . . . is replete with references to [p]laintiff's mental health issues" that the ALJ should have found plaintiff's depression and anxiety to be severe); *see also Dechert v. Comm'r of Soc. Sec.*, No. 18-CV-315-FPG, 2019 WL 3074061, at *4 (W.D.N.Y. July 15, 2019) (ALJ's failure to find plaintiff's anxiety, depression, and bipolar disorder severe where record contained consistent self-reports, diagnoses, and treatment for those impairments was error).

## II. The RFC Failed to Account for Plaintiff's Mental Impairments

Even if Plaintiff's mental impairments were properly found to be non-severe, "an RFC determination must account for limitations imposed by both severe and non-severe impairments." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). While "an erroneous determination that an impairment is not severe [] can be harmless error if the ALJ continues the analysis and considers all impairments in [the] RFC determination," *Sech v. Comm'r of Soc. Sec.*, No. 7:13-CV-1356 GLS, 2015 WL 1447125, at *3 (N.D.N.Y. Mar. 30, 2015), that is not the case here.

The assigned RFC is completely devoid of any limitations accounting for Plaintiff's mental impairments, which in itself requires remand. *Zochios v. Berryhill*, No. 17-CV-6207-FPG, 2018 WL 1835451, at *4 (W.D.N.Y. Apr. 18, 2018) (remanding where the RFC failed to include any mental limitations for plaintiff's anxiety and bipolar disorder) (collecting cases); *Habberfield v. Colvin*, No. 3:14-CV-1422 (LEK/CFH), 2016 WL 769774, at *18 (N.D.N.Y. Feb. 1, 2016), *report and recommendation adopted*, 2016 WL 796064 (N.D.N.Y. Feb. 24, 2016) (remanding for ALJ's failure to account for plaintiff's mental impairments in RFC).

Furthermore, the ALJ improperly discredited portions of the psychological consultative examiner's opinion. As a general matter, there is no "absolute bar to crediting only portions of medical source opinions." *Younes v. Colvin*, No. 14-cv-170, 2015 WL 1524417, *8 (N.D.N.Y. Apr. 2, 2015). However, an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject those portions given less weight. *See id.* (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently"); *Phelps v. Colvin*, No. 12-cv-976, 2014 WL 122189, *4 (W.D.N.Y. Jan. 13, 2014) ("The selective adoption of only the least supportive portions of a medical source's statements is not permissible") (internal quotations and brackets omitted); *Caternolo v. Astrue*, No. 11-cv-6601, 2013 WL 1819264, at *9 (W.D.N.Y. Apr. 29, 2013) ("[I]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination.") (internal quotations omitted) (collecting cases); *Searles v. Astrue*, No. 09-cv-6117, 2010 WL 2998676, at *4 (W.D.N.Y. July 27, 2010) ("An ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified.").

7

Plaintiff underwent a psychiatric evaluation with psychological consultative examiner Dr. Ippolito. Tr. 368-72. Dr. Ippolito diagnosed Plaintiff with recurrent, moderate major depressive disorder, unspecified anxiety disorder with panic attacks, and rule out unspecified personality disorder with borderline features. Tr. 371. Significantly, Dr. Ippolito opined that Plaintiff had a moderate limitation in appropriately dealing with stress due to her current emotional distress. Tr. 371.

The ALJ gave "moderate weight" to Dr. Ippolito's opinion, but "less weight" to the portion of Dr. Ippolito's opinion that Plaintiff has a moderate limitation in dealing with stress because the opinion was "only partially consistent with the medical evidence of record . . . ." Tr. 22. As discussed above, the record contains numerous references to Plaintiff's mental health impairments and their effects on her functioning, and generally supports Dr. Ippolito's assessment that Plaintiff is moderately limited in appropriately dealing with stress. Tr. 102, 104, 113, 122, 123, 124, 125, 127, 379, 389-90, 393, 397, 407, 413, 415-16. The ALJ's reason for assigning different weights to parts of Dr. Ippolito's opinion is not supported by substantial evidence. Thus, while the ALJ ostensibly considered Plaintiff's mental impairments in determining not to include them at all in the RFC, his decision was based in part on improper cherry-picking of Dr. Ippolito's opinion.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 17) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 18) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 4, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court